1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   RICHARD MICHAEL PAYNE,

                                              NO:  2:18-CV-0258-TOR
8                        Petitioner,
                                              ORDER DENYING WRIT OF
9        v.                                   HABEAS CORPUS

10  DONALD R. HOLBROOK,

11                       Respondent.

12

13          BEFORE THE COURT is Richard Michael Payne's Petition for Writ of

14  Habeas Corpus (ECF No. 1).  Respondent Donald Holbrook has answered the

15  petition and filed relevant portions of the state court record.  ECF Nos. 6, 7.

16  Petitioner is represented by Stephen T. Graham and Respondent is represented by

17  John J. Samson, Assistant Attorney General.  The Court has reviewed the entire

18  record, the parties' completed briefing, and is fully informed.  For the reasons

19  discussed below, the Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**.

20  //

# BACKGROUND

Petitioner is in custody at the Washington State Penitentiary at Walla Walla serving a sentence imposed by the Spokane County Superior Court for two counts of first degree child molestation and one count of felony indecent exposure. ECF No. 7-1 at 2, 14. The underlying facts and procedural history, summarized by the Washington Court of Appeals on direct appeal, are as follows:

> Around 8:00 p.m. on June 21, 2012, officers responded to a call at Northtown Mall in Spokane regarding a male who had exposed himself and touched A.R.H., a five year-old girl. Officers were told the incident occurred at Bumpers arcade. Bumpers' video surveillance captured the incident on camera. A Bumpers employee identified Mr. Payne as the male in the surveillance video.
>
> Approximately two hours earlier that evening, A.R.H., accompanied by her 19-year-old brother and his girlfriend, B.C., and B.C.'s 11-year-old sister K.C., went to Bumpers while A.R.H.'s mom, Heather Holland, and K.C.'s grandmother went shopping. A.R.H. and K.C. left their older siblings to play a game. According to K.C.'s testimony at trial, Mr. Payne came up to the girls and said he was going to watch them play. K.C., believing this behavior was "kind of stalkerish," told A.R.H. they should "get away." 5 Report of Proceedings (5 RP) at 838. The girls went to a skateboarding game; K.C. was on the game while A.R.H. stood next to her. K.C. saw Mr. Payne standing behind A.R.H., rubbing A.R.H.'s leg, pulling up her skirt, and touching her buttocks while his penis was out. K.C. was uncomfortable; she took A.R.H. and walked away. K.C. testified while Mr. Payne touched A.R.H., A.R.H. "[got] really pale like she was freaking out" and was speechless. 5 RP at 841. K.C. and A.R.H. found B.C. and told her what happened. A.R.H.'s brother noted A.R.H. was "blank" and K.C. was shocked and scared. B.C. noted K.C. was crying, shaking, and pale. A.R.H.'s brother failed to find Mr. Payne before reporting the incident to mall security.

Ms. Holland was notified of the incident. When she got to Bumpers, she noticed K.C. was "stressed and not herself." 5 RP at 708. Ms. Holland watched the surveillance video. When she first watched the video, she thought she saw Mr. Payne pull his penis out of his pants; this caused her to scream and cry. Upon reviewing the video, she said she did not see Mr. Payne pull his penis out but he did fondle himself. She maintained Mr. Payne had his hand on A.R.H.'s backside. A.R.H.'s brother, after watching the video, testified he saw Mr. Payne pull his penis out of his pants. K.C. also watched the video in the presence of Ms. Holland, A.R.H.'s brother, B.C., and her grandmother; she noted everybody was "disgusted and crying." 5 RP at 849. She stated she did not see Mr. Payne's penis on the video because he was behind a big pillar. Ms. Holland, A.R.H.'s brother, B.C., and K.C. testified at trial.

Detective Jerry Hensley investigated the case. After identifying the man in the surveillance video as Mr. Payne, he and Detective Paul Lebsock went to Mr. Payne's address. The detectives were dressed in plain clothes, but their guns were visible. Upon arrival, Detective Hensley walked directly to the front door and rang the doorbell; there was no response. Detective Lebsock, thinking somebody might be working in the backyard given the nice weather, went to the driveway and noted the six foot vinyl fence surrounding the backyard. He could see over the fence from the driveway and saw a man; Detective Lebsock walked along the side of the fence, verbally identified himself, and asked the man to come talk to them. Mr. Payne readily came over, exited the gate, and talked with the detectives while standing in his driveway.

After identifying himself, Detective Hensley read Mr. Payne his constitutional rights; Mr. Payne waived his rights and agreed to talk. Mr. Payne was calm, cooperative, did not appear to be under the influence of anything, and gave appropriate and responsive answers. Payne admitted to being at the mall on the day in question. After being told there was a video of the incident, Mr. Payne repeatedly said, "'I should not have been there.'" 5 RP at 763. After being advised witnesses said he removed his penis from his shorts, Mr. Payne admitted to touching a girl on the thigh and buttocks while his penis was out. He claimed it was just a random act.

While talking with the detectives, Mr. Payne's girlfriend arrived. The detectives introduced themselves and told her she was welcome to stay. Mr. Payne then looked at her and said, "'I touched a girl.'" 5 RP at 767. In response to a direct question, Mr. Payne admitted he did this for sexual gratification. In the CrR 3.5 hearing, Mr. Payne argued these statements were the product of coercion and were obtained via an illegal search and seizure. The trial court concluded Mr. Payne's statements to the detectives were freely and voluntarily made, legally obtained, and could be introduced at trial. At trial, Mr. Payne denied touching anyone or exposing his penis.

There were numerous other pre-trial proceedings. The trial court admitted evidence of Mr. Payne's 2001 attempted first degree child molestation conviction as a charged element elevating count III, indecent exposure, to a felony. The court admitted the prior conviction under ER 404(b) to show proof of a common scheme or plan, motive or intent, and to refute a claim of accident or mistake. At trial, the victim of the 2001 conviction and her mother testified. Defense counsel was found in contempt of court before trial concerning his failure to appear at a hearing, a subject of a separate appeal; the show cause hearing was held without Mr. Payne's presence.

Mr. Payne was charged and convicted of two counts of first degree child molestation and one count of felony indecent exposure. He was sentenced as a persistent sex offender to life in prison without the possibility of release. He appealed.

*See State v. Payne*, 189 Wash. App. 1014, *1-2 (2015); ECF No. 7-1, at 31-34.

The Washington Court of Appeals affirmed Petitioner's sentence on July 28, 2015. *See id*. Petitioner then moved for discretionary review in the Washington Supreme Court. ECF No. 7-2 at Exhibit 9. On March 2, 2016, the Washington Supreme Court denied review. *Id.* at Exhibit 10. On May 3, 2016, the Washington Court of Appeals issued its mandate to the Superior Court, certifying that the

court's July 28, 2015, opinion became the decision terminating review on May 2, 2016. *Id.* at Exhibit 11.

On March 15, 2017, Petitioner filed a Personal Restraint Petition ("PRP") with the Washington Court of Appeals. *See id.* at Exhibit 12. The Washington Court of Appeals dismissed the PRP on January 29, 2018. *See id.* at Exhibit 14. On March 8, 2018, Petitioner moved the Washington Supreme Court for discretionary review, *see id.* at Exhibit 15, which was denied on September 14, 2018, *see id.* at Exhibit 17. The Washington Court of Appeals issued a Certificate of Finality on September 17, 2018, certifying that the decision of the Court of Appeals dismissing Petitioner's PRP became final on September 14, 2018. *Id.*

Petitioner filed this federal 28 U.S.C. § 2254 habeas petition on August 14, 2018, alleging four grounds for relief:

(1) the trial court erred when it admitted Petitioner's confession;

(2) trial counsel was ineffective by failing to interview the victim of Count I and II;

(3) Petitioner was denied the assurances of fairness under the Fourteenth Amendment when improper 404(b) evidence was admitted; and

(4) a lifetime of incarceration without the possibility of early release for child molestation in the first degree is cruel and unusual punishment in violation of the Eighth Amendment.

*See* ECF No. 1 at 5-10.

**DISCUSSION**

## I. Legal Standard

A court will not grant a petition for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner can show that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings which demands that the state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation omitted).

A rule is "clearly established Federal law" within the meaning of section 2254(d) only if it is based on "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). "A state-court decision is 'contrary to' the clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

nevertheless arrives at a result different from [Supreme Court] precedent.'" *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The state court need not cite to the controlling Supreme Court precedent, nor need it even be aware of the relevant case law, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application of" clearly established federal law is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woodall*, 572 U.S. at 419 (internal quotation marks omitted).

In order to obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 419-20 (brackets omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Under the harmless error standard of review adopted by the Supreme Court, even if a reviewing court finds constitutional error, the challenged error must have caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict in order for the court to grant habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted).

The petitioner bears the burden of showing that the state court decision is contrary to, or an unreasonable application of, clearly established precedent. *See*

*Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011) (citing *Woodford*, U.S. 537 at 25). In conducting its habeas review, a federal court looks "to the last reasoned decision of the state court as the basis of the state court's judgment." *Merolillo v. Yates*, 663 F.3d 444, 453 (9th Cir. 2011) (citation omitted). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

## II. Evidentiary Hearing

"[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) (evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record)). Indeed, review is limited to the record that was before the state court. *Pinholster*, 563 U.S at 181-82 ("[R]eview under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Because federal habeas is "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," the types of errors redressable under § 2254(d) should be apparent from the record. *Ryan v. Gonzales*, 568 U.S. 57, 75 (2013) (quoting *Harrington*, 562 U.S. at 102–03).

Here, Petitioner has not established the limited circumstances for entitlement to an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2). The entire state court record is before the Court. ECF No. 7. Plaintiff does not rely on "a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). Thus, the issues raised can be resolved by reference to the state record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). Accordingly, the Court determines that an evidentiary hearing is a "futile exercise" and unnecessary. *Id*.

### III. Unexhausted Claims

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). A petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). This exhaustion requirement is "grounded in principles of comity" as it gives states "the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

To satisfy the exhaustion requirement, a federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state supreme court even though the state court did not reach the argument on the merits)). The petitioner must present the claims to the state's highest court even where such review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66. Rather, each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court. *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982). The habeas petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling the petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

Here, Respondent contends Petitioner failed to property exhaust claims 1 and 3. ECF No. 6 at 7-8. Regarding claim 3, Respondent maintains that Petitioner presented his claim 3 to the Washington Court of Appeals and the Washington Supreme Court as a question of state—not federal—law. The Court agrees. On

direct appeal, Petitioner raised the 404(b) issue with the Washington Court of Appeals and the Washington Supreme Court by arguing that the trial court erred when by admitting Petitioner's prior conviction under 404(b) "without balancing on the record the probative and prejudicial effect" as required by Washington law. ECF No. 7-2, Exhibit 9 at 25. Petitioner did not raise the 404(b) issue with the Washington Supreme Court in his collateral relief proceedings. *Id.* at Exhibit 15; *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (petitioner must "fairly present" issues to the state supreme court before seeking federal habeas relief). Therefore, the Court finds that Petitioner's claim 3 is unexhausted.

Regarding claim 1, Respondent contends Petitioner presented this claim to the Washington Supreme Court as a violation of the Fourth Amendment, but now presents the claim to this Court as a violation of the Fifth Amendment. *Id.* at 7. The record says otherwise. In his Motion for Discretionary Review, Petitioner did in fact argue that "the statements to law enforcement were involuntary and induced by physical and/or psychological coercion." ECF No. 7-2 at 30. However, while his allegations arguably allude to a Fifth Amendment violation, the record confirms that Petitioner framed his coercion claim as an issue of Washington law. ECF No. 7-2 at 30 (arguing that detectives coerced his confession through misrepresentations, citing *State v. Broadaway*, 133 Wash.2d 118, 132 (1997)).

Because Petitioner failed to present claim 1 to the Washington Supreme Court as a federal constitutional claim, the Court finds that this claim is also unexhausted.

Respondent concedes that Petitioner properly exhausted his state court remedies as to claims 2 and 4 because Petitioner fairly presented the claims to the Washington Supreme Court on the same factual bases and legal theories as he now presents the claims to this Court. ECF No. 6 at 7. The Court agrees that Petitioner properly exhausted claims 2 and 4. Thus, Petitioner's petition is a "mixed petition," i.e., it contains both exhausted and unexhausted claims.

## A. Mixed Petitions

Federal district courts may not adjudicate mixed petitions for habeas corpus. *Rhines v. Weber*, 544 U.S. 269, 273–274 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). In *Lundy*, the Supreme Court directed federal courts to dismiss mixed petitions without prejudice and allow petitioners to return to state court to present the unexhausted claims to that court in the first instance. 455 U.S. at 522. Alternatively, Petitioners could dismiss their unexhausted claims and proceed solely on the exhausted claims. However, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing federal habeas petitions. 28 U.S.C. § 2244(d). As a result of the interplay between AEDPA's new one–year statute of limitations and *Lundy's* dismissal requirement, petitioners who come to federal court with "mixed" petitions run the

risk of forever losing their opportunity for any federal review of their unexhausted claims. *Rhines*, 544 U.S. at 274–275.

Accordingly, courts have adopted a "stay and abeyance" procedure where, rather than dismiss the mixed petition pursuant to *Lundy*, a district court may stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the state remedies are exhausted, the district court lifts the stay and allows the petition to proceed in federal court. *Rhines*, 544 U.S. at 275–276. In *Rhines*, the Supreme Court approved the use of a stay and abeyance in "limited circumstances," stating that:

> it would likely be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if [1] the petitioner has good cause for his failure to exhaust, [2] his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id*. at 278. In the present case, the Court finds that Petitioner has not satisfied the three *Rhines* requirements.

Nonetheless, pursuant to 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." The Ninth Circuit has recognized that it is appropriate to deny an unexhausted claim on the merits under § 2254(b)(2) when it is perfectly clear that the applicant does not raise even a colorable federal claim. *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir.

2005); *Rhines* 544 U.S. at 277-78 (stay is inappropriate when the unexhausted claims are "plainly meritless," or where the petitioner has engaged in "abusive litigation tactics or intentional delay").

Respondent asserts that Petitioner, having failed to property exhaust his federal habeas claims, would now be barred from presenting those claims to the state courts under the state time bar statute, RCW 10.73.090. ECF No. 6 at 13. RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's conviction became final on May 3, 2016, when the Washington Court of Appeals issues its mandate terminating direct review. RCW 10.73.090(3)(b). Based on the record, it appears that Petitioner would now be time barred from returning to the state courts to present his unexhausted claims. As such, the Court agrees with Respondent that Petitioner has procedurally defaulted on his unexhausted federal habeas claims.

When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To

satisfy the "cause" prong of the cause and prejudice standard, a petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id.* at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

Respondent asserts that Petitioner cannot show an external factor caused his procedural default and, therefore, cannot show cause and prejudice to excuse his default. ECF No. 6 at 14. Petitioner did not file a response to Respondent's Answer. Based on the Court's review of the record and Petitioner's briefing, the Court agrees that Petitioner has not established cause for his procedural default. Because Petitioner has not met his burden of demonstrating cause for his procedural default, the Court need not determine whether there was any actual prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing

*Smith v. Murray*, 477 U.S. 527, 533 (1986)).  In addition, Petitioner makes no colorable showing of actual innocence.  The Court also finds that Petitioner's unexhausted claims are plainly meritless under federal law.

For these reasons, Petitioner fails to demonstrate that his unexhausted claims are eligible for habeas review.  Petitioner's unexhausted claims—claims 1 and 3— are therefore dismissed.  The Court now turns to the merits of Petitioner's remaining allegations.

## IV.    Review of Claims on the Merits

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  In interpreting this portion of the federal habeas rules, the Supreme Court has clarified that a state decision is "contrary" to clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

//

**Claim 2: Ineffective Assistance of Trial Counsel**

Petitioner argues his trial counsel provided ineffective assistance of counsel by failing to interview A.R.H., the victim of the two counts of child molestation, "which ultimately resulted in [Petitioner's] two convictions of first degree child molestation." ECF No. 3 at 11. As he argued below, Petitioner asserts that trial counsel's failure to interview A.R.H. was not a strategic decision and prejudice should be presumed under the circumstances. *Id*. at 11-16. Even if prejudice is not assumed, Petitioner maintains that prejudice is established because he was denied several crucial assurances of fairness, including the opportunity to confront his accuser, to cross-examine his accuser, and to fully effectuate his defense theory that he did not engage in sexual contact with A.R.H. *Id*. at 17.

In order to succeed on a constitutional claim for ineffective assistance of counsel, a defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and that this "deficient performance prejudiced the defense." *Id*. at 687. When considering ineffective assistance of counsel claims, a court must be "highly deferential" to counsel's performance and the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance" and that counsel's conduct might be considered "sound trial strategy." *Id.* at 689. (quoting *Michel v. Louisiana* 350 U.S. 91, 101 (1955). Additionally, habeas courts must be deferential not only to the decisions of defense counsel, but also to the decisions of the state courts as required under 28 U.S.C. § 2254(d)(1). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

In finding Petitioner's trial counsel was not ineffective for failing to interview A.R.H., the Washington Court of Appeals made several observations about the trial court proceedings. First, the court noted that Petitioner's trial counsel initially sought public funds for his travel expenses to interview A.R.H. in person, as she was located in Montana, but the trial court denied the request. ECF No. 7-2 at 171-72. Subsequently, the State advised counsel that it decided not to call A.R.H. as a witness or offer any of her hearsay statements at trial. *Id.* at 172. "Instead, the State presented its proof largely through the testimony of C.K., Petitioner's own admissions to the detectives, and the surveillance video." *Id.* The court also observed that Petitioner's trial counsel "argued in closing that the State's case was weakened by the absence of A.R.H. as a witness." *Id.* at 172-73. Based on this record, the court concluded:

> It is apparent from [trial counsel's] closing argument that his choice not to interview A.R.H. or procure her as a witness was part of a reasonable strategy to portray the State's case as weak due to A.R.H.'s absence from trial and thereby bolster the credibility of [Petitioner's] claim that he did not touch her. Counsel avoided the risk that an interview with A.R.H. (which required presence of a victim-witness

representative) would be more fruitful for the State, which might then decide to present her as a witness. In any event, a statement by A.R.H. that she did not feel the first touching would not necessarily help [Petitioner's] case in light of the State's strong proof (including [Petitioner's] own statements to police) that the touching occurred, and the State was not required to prove A.R.H.'s awareness of the touching as an element of molestation. [Trial counsel's] strategy enabled him to present a viable (albeit unsuccessful) argument to the jury, while still preserving issues that he later raised on appeal regarding denial of the missing witness instruction and confrontation/compulsory process rights that depended on A.R.H.'s absence from trial. [Petitioner] does not overcome the strong presumption that counsel performed reasonably under *Strickland*.

*Id*. at 173. The court also found that Petitioner failed "to establish prejudice in any event when he presents no evidence that A.R.H.'s statements would have benefitted him." *Id*. at 8. In rejecting Petitioner's Motion for Discretionary Review, the Washington Supreme Court largely agreed with the Court of Appeals' analysis, emphasizing that Plaintiff's failed to establish prejudice under *Strickland*. *See id*. at 222-23.

The Court finds nothing in the record and Petitioner has made no showing that his counsel's decisions at trial amounted to anything less than sound trial strategy. Additionally, Petitioner has not shown that any alleged deficiencies in his legal representation prejudiced him at trial, nor that the state court decisions were contrary to clearly established federal law. For these reasons, Petitioner's ineffective assistance of counsel claim is denied.

//

**Claim 4: Sentence of Lifetime Incarceration**

Next, Petitioner argues that his sentence of life in prison without the possibility of parole constitutes cruel and unusual punishment in violation of the Eighth Amendment. ECF No. 3 at 20-25. Under Washington's "two strikes" law, defendants who are convicted of certain sex offenses, including first-degree child molestation, and who have previously been convicted of at least one such offense, are classified as persistent offenders. *See State v. Morin*, 100 Wash. App. 25, 26 (2000); RCW 9.94A.570, 9.94A.030(38)(b). Here, Petitioner qualified as a persistent offender under RCW 9.94A.030(38)(b) because he was convicted of child molestation in the first degree, and he had prior a conviction for attempted child molestation. As a persistent offender, the trial court was required to sentence Petitioner to life imprisonment under RCW 9.94A.570. Petitioner contends that "Washington's statute requiring a life sentence is unconstitutional as applied to the facts of [his] case." ECF No. 3 at 24.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The last clause "prohibits not only barbaric punishments," *Solem v. Helm*, 463 U.S. 277, 284 (1983), but any "extreme sentence[] that [is] 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality opinion) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

concurring in part and concurring in the judgment)).  While the Supreme Court's "precedents in this area have not been a model of clarity," "[t]hrough this thicket of Eighth Amendment jurisprudence, one legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

While the "precise contours" of the gross proportionality principle "are unclear," the proportionality principle is only applicable in the "exceedingly rare" and "extreme" case.  *Id.* (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment) (internal quotation marks omitted)). In determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crimes, courts "consider all of the circumstances of the case." *Graham v. Florida*, 560 U.S. 48, 59 (2010).  In *Graham*, the Supreme Court endorsed the following approach for determining whether a sentence if unconstitutionally excessive:

> A court must begin by comparing the gravity of the offense and the severity of the sentence.  "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.

560 U.S. at 60 (quoting *Harmelin*, 501 U.S. at 1005) (internal citations omitted)).

Thus, "[c]ourts must objectively measure the severity of the defendant's sentence in light of the crimes he committed." *Norris*, 622 F.3d 1276, 1287 (9th Cir. 2010). This is measured by the harm caused to the victim or society, the culpability of the offender, and the magnitude of the crime. *Solem*, 463 U.S. at 277.

On direct review, the Washington Court of Appeals addressed Petitioner's cruel and unusual claim under Article I, section 14, of the Washington Constitution rather than under the Eighth Amendment, stating that the Washington Constitution's bar on cruel punishment "is more protective than the Eighth Amendment." ECF No. 7-1 at 58. The court then applied a four-factor test adopted by the Washington Supreme Court in *State v. Fain*, 94 Wash.2d 387 (1980), to determine "whether a life sentence without the possibility of release for a two-time sex offender under the Persistent Offender Accountability Act is unconstitutional." ECF No. 7-1 at 58. Guided by the analysis in *State v. Gimarelli*, 105 Wash. App. 370 (2001), a published state appellate court opinion considering the same proportionality issue, the court concluded that Petitioner's mandatory life sentence did not constitute cruel and unusual punishment for the following reasons: "(1) attempted first degree child molestation was a most serious and violent sex offense; (2) the purpose of the two strikes law is to deter sex offenders and protect society; (3) while attempted child molestation would most

likely not earn the defendant a life sentence in other jurisdictions, that factor is not disposition; and (4) first degree child molestation and attempted first degree child molestation are serious violent sex offenses which result in a life sentence if a defendant had a prior serious violent sex offense conviction." ECF No. 7-1 at 58-59.

Here, Petitioner does not challenge any particular aspect of the state appellate court's reasoning. He simply asserts that "Washington's statute requiring a life sentence is unconstitutional as applied to the facts of [Petitioner's] case." ECF No. 3 at 24. This argument is without merit, as illustrated by the Ninth Circuit's decision in *Norris v. Morgan*, 622 F.3d 1276 (9th Cir. 2010), *cert. denied*, 562 U.S. 1228 (2011). In *Norris*, the defendant, who had a prior conviction for first-degree child molestation, was convicted of one count of child molestation and sentenced to life in prison without the possibility of parole under Washington's two strikes law. "The factual specifics of Norris's offense involved him touching a five-year-old girl on her 'privates' or genitalia' and over her clothing for at most 'a couple of seconds.'" *Id*. at 1293. The victim testified at trial, stating that "a man touched her on her 'privates,' 'the front one.'" *Id*. at 1281. After exhausting his state court remedies, the defendant filed a petition for writ of habeas corpus in federal district court challenging the constitutionality of his sentence under Washington's two strikes law. Like Petitioner, the defendant in *Norris* asserted

that his life-without-parole sentence was grossly disproportionate to his offense. The district court concluded that the defendant's sentence did not violate the Eighth Amendment. *Id*. at 1284.

In considering the defendant's Eighth Amendment gross disproportionality claim, the Ninth Circuit compared "the harshness of the penalty imposed upon the defendant with the gravity of his triggering offense and criminal history." *Id*. at 1290. The Ninth Circuit ultimately concluded that the defendant's sentence was "not grossly disproportionate to his crime and so does not violate the Eighth Amendment's prohibition against cruel and unusual punishment," and on that basis upheld the district court's denial of habeas relief on the petitioner's Eighth Amendment claim. *Id*. at 1296. The Ninth Circuit rested its decision on the legislative intent of the two strikes law—"incapacitation and deterrence of repeat offenders"—coupled with the statutory classification of first-degree child molestation as a "most serious" and "violent" offense, and the defendant's prior similar conviction. *Id*. at 1280, 1291-96; RCW 9.94A.030(33)(a), (55)(a)(i). If the sentence in *Norris* did not run afoul of the Eighth Amendment, Petitioner's sentence here clearly does not either, as Petitioner's conduct and criminal history closely parallels that of the defendant in *Norris*.

Petitioner attempts to distinguish his case from *Norris*, arguing that his actions "are not as serious" as the defendant's conduct in *Norris*. ECF No. 3 at 22.

Specifically, Petitioner asserts that the victim in this case "was not aware of what was done, was not interviewed by the defense, and did not testify," unlike the victim in *Norris*. *Id*. at 23. Based on the Court's understanding of his argument, Petitioner suggests that there was no psychological harm to the victim and this should factor into the Court's review of Petitioner's life sentence. As Petitioner elaborates, "[w]hile the victim's unawareness is not a defense to the charge of child molestation (nor should it be), a court must be able to consider this in deciding what sentence should be appropriate." *Id*. at 24. Petitioner contends that, in "sexual cases" such as this one, "[t]he psychological harm to the victim is a central factor in the eighth amendment analyses." *Id*. at 23.

The Court is unpersuaded by Petitioner's argument that the victim's alleged "unawareness" of his conduct somehow renders his life sentence grossly disproportionate to the gravity of his most recent offense and criminal history. Petitioner was convicted of first-degree child molestation, a most serious and violent offense. The gravity of the offense is intensified in this case by the fact that the victim was only five-years-old at the time of the incident. Petitioner had a prior conviction for attempted first-degree child molestation. Despite the prior conviction, Petitioner failed to reform. Petitioner's conduct being arguably less egregious than others who have been charged under this statute does not absolve him of the consequences of his actions. This is not "'the rare case in which a

threshold comparison of the crime committed and the sentences imposed leads to an inference of gross disproportionality." *Norris*, 622 F.3d at 1296 (quoting *Harmelin*, 501 U.S. at 1005). Thus, the Court concludes that Petitioner's sentence is not disproportionate to his crimes and recidivism. Accordingly, Petitioner's gross disproportionality claim is denied.

## V. Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted).

Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with the Court's resolution of his constitutional claims or could conclude that any issue deserves encouragement to proceed.

//

//

**ACCORDINGLY, IT IS ORDERED:**

1. Petitioner's Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

2. Any appeal taken by Petitioner of this matter would not be taken in good faith as he fails to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and **CLOSE** the file.

**DATED** April 10, 2019.



THOMAS O. RICE
Chief United States District Judge